Bigger, J.
This ease, together with the case of Irvine v. The City, Vogel v. The City, Pugh v. The City, Krigbaum v. The City, Stevenson, on behalf of heirs and others, v. The City, and Pugh v. The City, were tried together and submitted upon the same evidence.
•The plaintiffs seek- to enjoin the city and its officers and agents from destroying their fences and buildings erected upon their lots, located upon the north side of what is known as G-ustavus lane, in such a way as the city claims to encroach upon the street or alley. The lots in question have their frontage upon Franklin avenue, and this street or alley extends along the rear of the plaintiffs’ lots.
*42 Before proceeding to consider the case upon the evidence, I consider first the question of the right of the plaintiffs to file an amended petition in this case to make the petition conform to the evidence offered upon the hearing. This is, of course, a power which in proper cases the court may exercise in furtherance of justice, but as I understand the city’s claim it is that it would be unfair to the city at this time to permit the amendment, which raises for the first time the question as to whether or not this highway is a public street or alley, or as the plaintiffs claim only a private way. As to this claim of the city I observe first that I distinctly recollect that it was said by counsel representing the plaintiffs several times during the course of the trial that they would desire to amend their petition to make it conform to evidence offered, either at that time or after the conclusion of the taking of evidence. I do not know whether the counsel for the city directly consented that this might be done, but they did not object to it. Further, the city itself offered the evidence which the plaintiffs now claim shows that this is not a public street of the city but a private way. The city seems to have assumed upon the trial that, being charged with the destruction of private property, the burden was upon it, when it sought to justify the destruction, to prove as a necessary element of its defense that Gustavus lane was a public street or alley of the city, and I do not see how it can now claim to be prejudiced by the legal conclusions and deductions which may fiow from the consideration of the evidence which it itself offered. The amended petitions will therefore be permitted to be filed to conform to the evidence offered in the case.
The evidence offered upon the trial shows that in 1839 the lots of plaintiffs lying along the north side of ^Gustavus lane were a part of a tract of land belonging to William Miner and others, the said tract of land then being beyond the corporate limits of the city. That in order to effect the partition of a tract of which they were owners in common, a deed was executed to James Bryden of the entire tract, consisting of 113 acres, and James Bryden upon the same day executed deeds to his co-owners for portions of the said land in severalty, reserving a share for *43 himself. A plat showing this subdivision of the farm was made, executed and recorded, and is referred to in the deed of the tract to Bryden and by him to the others in severalty. Upon this plat is shown an alley of the width of one and a half rods, and it is recited that it is for the common use of all persons interested now or who may hereafter be interested in any of said divisions or parts thereof, and not to be vacated or the use thereof abridged except by the consent of all such parties interested.
This lane or alley of the width of one rod and a half was excepted from the conveyance of the tract to Bryden. The fee of the land therefore remained in William Miner and his co-owners with an easement granted to the owners of the several divisions of the Bryden farm, and their successors in title, which i'ight and easement was nqt to be abridged except by the consent of all parties interested.
It is plain from the language here used that this was not a dedication of the lane to the use of the public. Before such dedication would become effective, even if it were a dedication to public use, it would be necessary to show an acceptance, and none such is shown. So far as I have been able to discover there was at that time no statute which provided for the subdivision of farm land and the platting and recording of the same. Such platting and recording, therefore, was ineffective as a dedication of the lane to the use of the public. This grant was only the grant of an easement in this strip of land to the owners of the several subdivisions and their successors in title, and if the city has acquired title to this strip of land it must have been in some other way than by this plat of the Bryden farm.
It appears from the evidence in the case that the improvements in the way of fences and outbuildings upon the rear of these lots were erected substantially upon the line of an old fence which had marked the north boundary of this lane for more than twenty-one years before those improvements were erected. In 1886 the land in which these lots are situated, and being lot three of the Bryden subdivision, became the property of Deshler and Sinks, who subdivided the same into city lots, *44 the land being then within the corporate limits. A plat was made and recorded and the city accepted the same as an addition to the city and a dedication of the streets shown thereon, which had not been before dedicated.
This plat shows Gustavus lane or Parsons lane along the south line of the addition, and it is shown upon the plat as 24.75 feet in width, the full width of the alley reserved in the deed to Bryden. But this manifestly could not be a dedication of these lots to public use, for Deshler and Sinks only obtained the title which their grantor had, and that did not include Gustavus lane, which was reserved from the original grant to Bryden. The city, therefore, could not accept what the grantors had no right or title to give. The fee of the streets in Ohio cities is in the city. But the fee in this street was never conveyed to Deshler and Sinks, and they could not, therefore, convey it to the city of Columbus.
The city seems to state in its argument, and that is I think the fact as it is in accord with the evidence and what would naturally be expected, that the property owners in building upon these lots should put their fences upon the line of the old fence which had for many years marked the south boundary line of this Deshler and Sinks subdivision to the north line of Gustavus lane.
But it is claimed that this fence was an encroachment upon the way as originally granted, of twenty-four and three-fourths' feet in width. That to the extent of the encroachment by the owner of lot three of the Bryden farm subdivision such owner acquired title to the same by adverse possession for more than twenty-one years as against the others who were interested therein. There is a serious question as to whether one co-owner can so acquire title as against his co-owners. Granting that the plat of Deshler and Sinks shows an intention upon their part to dedicate to public use this alley or lane to whatever extent they had an interest in it, how does it help the city is case? All they had to grant was a strip something like three feet in width. The showing that Gustavus lane is an alley or strip twenty-four ajad three-fourths feet wide would no more affect that *45 highway than it would have affected Parsons avenue on-the west of that subdivision if the plat had shown it to be one hundred feet wide. The more reasonable conclusion is that it was taken for granted that Gustavus lane was twenty-four and three-quarters feet in width because the original grant was of that width. There is nothing to show that Deshler and Sinks even supposed they had any right to dedicate Gustavus lane to public use. It bounded their tract on the south and so was shown on the plat. They certainly did not intend to increase the width of that highway by dedicating a strip along their south line for that purpose, nor did the city understand it was accepting a strip three feet wide when they accepted the undedicated streets' and alleys upon the plat. If it was the intention of Deshler and Sinks to add this strip from their tract in order to widen Gustavus lane, all they did was to restore to the owners of this land which was not included in the original subdivision of the Byrden farm that of which they had been deprived, making this private way twenty-four and three-quarters feet wide, according to the original grant.
The evidence shows that the city of Columbus has never exercised any act of ownership over this land; at least.it does not show that it ever did. The city does not claim title by prescription to a private way nor become charged with any responsibility as to such way by reason of the fact that the public may have used it together with those to whom it belonged.
A common law dedication -as well as statutory dedication is only completed when it is .accepted by the city, and the Supreme Court of this state has recently decided that mere user will not establish an acceptance against the city (Railway v. Roseville, 76 O. S., 87). There is absolutely no evidence to show- any act of ownership on the part of the city with respect to this lane. It is true it appears that the curbs were turned in on the cross streets, but I see nothing in that to indicíate any intention on the part of the city to assume responsibility for Gustavus lane as a street of the city. It did show that the city did not propose to shut up the lane and render it impassible for those who had the right to use the lane, and that is all it shows. *46 But the evidence fails to show that the city ever spent a dollar in improving Gustavus lane, or did any other act which would indicate an intention upon its part to assume ownership of this lane with its contingent responsibilities. It is clear from the evidence in this ease that there never was any statutory dedication of this lane to the use of the public, and it seems equally clear as a matter of law that there has been no common law dedication. It is plain that it was never intended by the owners of the strip to dedicate it to the public use, for it was a mere cul cle sac as originally reserved in the deed to Bryclen, and was plainly only fitted for use as a private way or easement -to the adjacent owners. The city concedes, as I understand, there has been no dedication to public use prior to the Deshler and Sinks subdivision. The city had, therefore, no title to this land then. Deshler and Sinks, as I have said, could not dedicate to public use what they did not own. If the city has acquired any right whatever it must be by user and that only gives title to the width the roadway has been used, and this lane never was wider than it is now.
It is argued by counsel representing the city that, whatever the character of this way, these plaintiffs are trespassers; that they are encroaching upon this way because it appears from the plat of Deshler and Sinks that this lane is twenty-four and three-quarters feet wide and that the old fence was an encroachment upon the lane, that Deshler and Sinks had dedicated the strip which they had acquired by prescription north of this fence to public use, and that these plaintiffs being thus trespassers and wrongdoers have no standing in a court of equity. It is conceded that if it is a private way then the owners are the only persons who can complain and they are not complaining, it is said. That is the very reason why the city can not justify their destruction of the property. The.only persons who can complain are not complaining, and non constat, but they never will. The same argument by which the city seeks to show ■title in Deshler and. Sinks by prescription to this strip wou’d seem to me to put it now in these lot owners as against the same parties. The principle sought to be invoked has--no application *47 here. Against all the world except these owners, these property owners have a right to their property and the city can not take refuge behind the claim which some person else might make but which they may never make, and which according to the argument of counsel it can not make. Those interested in this way-are probably content now, as they were before, to have this way maintained to the same width that it has always been maintained.
E. C. Irvine, for plaintiffs.
G. S. Marshall, for defendants.
I am satisfied upon the evidence- that Gustavus lane is a private way only and that the city has absolutely no right to do what it has undertaken to do, and that the property owners have a right to a permanent injunction restraining • the city and its officers and agents from destroying their fences and buildings. Even if the city had acquired title by user, which is the only possible way it could have acquired it, it would only extend to the width to which this lane has been used for more than fifty years. In every aspect of the case the city would be without color of right to destroy the plaintiffs’ property. The temporary injunction heretofore allowed is hereby made permanent.